UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DAVID KARL LONN,<br><br>                    Plaintiff,<br><br>v.<br><br>CORIZON HEALTH, DR. APRIL<br>DAWSON, DR. DAVID AGLER, and<br>DR. KLINT STANDER,<br><br>                    Defendants. | Case No. 1:14-CV-00031-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

**INTRODUCTION**

Pending before the Court is Defendant Dr. April Dawson's and Dr. Klint Stander's Motion for Summary Judgment. (Dkt. 55.) Having reviewed the parties' briefing, as well as the record in this matter, the Court concludes oral argument is unnecessary. Dist. Idaho L. Rule 7.1. Accordingly, the Court enters the following report recommending the motion for summary judgment be granted and the complaint against Dr. Dawson and Dr. Stander be dismissed with prejudice.

## FACTS

Plaintiff David Lonn, a prisoner in the custody of the Idaho Department of Correction (IDOC), filed his complaint on February 3, 2014 (Dkt. 3, 44),[1] against Corizon Health, and Drs. Dawson, Agler, and Stander. He alleged violations of the Eighth Amendment to the United States Constitution based upon deliberate indifference to his serious medical needs, and state law claims of negligence, from the period 2009 through the present. Plaintiff alleges he suffers from continued deterioration of his hip and prolonged pain due to lack of pain medication to treat his hip, and that conservative treatment was constitutionally deficient given a hip replacement alleviated pain in his other hip.

## A.      Procedural History

The Court on July 19, 2014, issued its initial review order permitting Plaintiff to proceed against the prison medical providers on his Eighth Amendment and negligence claims, and permitted him to amend his complaint. Drs. Stander and Dawson filed motions to dismiss based upon the statute of limitations. Meanwhile, Plaintiff on April 13, 2015, filed a motion for leave to file his amended complaint. (Dkt. 32.) The proposed amended complaint named Corizon Health Services and Drs. Dawson, Agler, and Stander as defendants. However, the prayer for relief contained allegations of violations of the Eighth Amendment only.

---

[1] The docket in this case indicates Plaintiff's complaint was filed on February 6, 2014. However, the Court in a later report and recommendation, which was adopted by the District Judge, applied the mailbox rule and deemed the Complaint filed on February 3, 2014. (Dkt. 44 at 6.)

**REPORT AND RECOMMENDATION  - 2**

On June 26, 2015, the Court issued its report and recommendation recommending Dr. Dawson's motion to dismiss be denied; Dr. Stander's motion for partial dismissal be conditionally granted; and Plaintiff's motion for leave to amend the pleadings be granted. (Dkt. 44.) The Court noted that, in the proposed amended complaint, Plaintiff clarified his allegations of wrongdoing against the doctors, based on the following time periods: (1) Dr. Dawson's treatment rendered in April of 2012, and from 2008 through 2014; (2) Dr. Agler's treatment rendered in November of 2012 and January of 2014; and (3) Dr. Stander's treatment of him in 2009. The Court recommended that all state and federal claims against Dr. Stander be dismissed with prejudice, unless Plaintiff could show that equitable tolling or equitable estoppel should be applied to render the claims timely. Further, the Court recommended that claims regarding Dr. Dawson's treatment of him that were not within the statute of limitations period be dismissed as well, absent a showing of equitable tolling or equitable estoppel. And finally, because Plaintiff desired to pursue state law claims that were not clearly included in the proposed amended complaint, the Court recommended Plaintiff be given a second opportunity to amend his complaint consistent with the Court's instructions in its report and recommendation.

The District Judge adopted the Report and Recommendation on September 2, 2015, granting Plaintiff the opportunity to file a second amended complaint on or before October 2, 2015. (Dkt. 49.) Plaintiff later decided not to file a second amended complaint, and the Court in its February 5, 2016 Order and Report and Recommendation ordered that Plaintiff could no longer proceed on any state law claims asserted in the amended complaint. The Court recommended that the proposed amended complaint (Dkt.

32-1) be filed as the operative pleading. The District Judge adopted the report and recommendation, and the proposed amended complaint was filed on February 23, 2016. (Dkt. 64.)

Prior to the Court's resolution of which complaint was the operative pleading, Defendants Dawson and Stander filed their motion for summary judgment on December 17, 2015. (Dkt. 55.) Defendants note Dr. Dawson assessed Plaintiff on two occasions in relation to his right hip. The first occasion was June 7, 2011, and Defendants argue any claims arising from this assessment are barred by the statute of limitations. As to Dr. Dawson's only other involvement with treating Plaintiff's right hip, Dr. Dawson diagnosed Plaintiff on May 23, 2012, with end stage osteoarthritis and determined he was on appropriate medications for the level of activity required at South Idaho Correctional Institution ("SICI"). Defendants assert that, in Dr. Dawson's medical opinion, she did not believe surgery was medically necessary on that date or before in 2011. Dr. Dawson was not involved in the care and treatment of Plaintiff thereafter. Accordingly, Defendants argue Dr. Dawson's decision to continue with conservative treatment on May 23, 2012, is a dispute as to a course of treatment between Dr. Dawson and Mr. Lonn, which is not actionable under the Eighth Amendment. As to Dr. Stander, Defendants contend Plaintiff's claims derive from 2009 and are barred by the statute of limitations.

## B.    Undisputed Facts

Defendants submitted Plaintiff's medical records from the relevant time period. Plaintiff has a history of left hip replacement in 2005 and left knee replacement in 2006. (Dawson Aff. Ex. A (Dkt. 55-10 at 36-38.) Dr. Stander first assessed plaintiff on

February 9, 2009, in relation to complaints of hip pain. (Dkt. 55-10 at 5.) He noted Plaintiff already had an artificial left hip and left knee. Plaintiff requested a right hip replacement and Vicodin for pain. (*Id.*) Dr. Stander observed Plaintiff had severe limitations of motion of the right hip and that the knee was okay with good range of motion. (*Id.*) He diagnosed Plaintiff with severe osteoarthritis of the right hip. (*Id.*) Dr. Stander ordered an x-ray of the right hip and pelvis, ordered a cane, and ordered naproxen and percogesic for pain. (*Id.*) Dr. Stander also made an order for a lower bunk memorandum. (Dkt. 55-10 at 9.)

An x-ray taken February 10, 2009, demonstrated marked degenerative joint disease ibn Plaintiff's right hip. (Dkt. 55-10 at 6, 78.) Dr. Stander assessed Plaintiff in follow-up on March 9, 2009. (Dkt. 55-10 at 5.) Plaintiff reported complaining of severe pain in his right hip, and requested narcotic pain medication. Dr. Stander observed Plaintiff ambulated quite well and had fairly good motion for the right leg and did not want to use a cane. (*Id.*) He diagnosed Plaintiff with severe degenerative joint disease of the right hip but did not believe it was severe enough for a hip replacement or for narcotic pain medications. (*Id.*)

Dr. Stander next assessed Plaintiff on May 1, 2009, in relation to right hip pain. (Dkt. 55-9 at 62.) Plaintiff again requested a right hip replacement. (*Id.*) Dr. Stander observed that Plaintiff ambulated with a slight limp and a moderate limitation of range of motion. (*Id.*) Dr. Stander's assessment noted degenerative changes of the right hip based upon the February 2009 x-ray and Plaintiff's moderate pain, but in Dr. Stander's opinion, noted that Plaintiff did not need a hip replacement or narcotic pain medications at that

time. Plaintiff was instead offered non-narcotic pain medications and an order for

Naproxen was made. (*Id.*; *see also* Dkt. 55-9 at 55-56.) Dr. Stander did not treat Plaintiff

again.

On May 6, 2009, Plaintiff submitted a Health Service Request form ("HSR")

stating the following: "Because of the poor quality of health care here relating to my need

for a hip replacement, I am unable to lead a pain free life. I would like to see an

orthopedic Dr. in hopes of receiving humane treatment that follows Federal inmate

guidelines." (Dkt. 55-9 at 53.) Dr. Dawson was scheduled to assess Plaintiff in relation to

his right hip on March 22, 2011, but Plaintiff was a no-show. Dawson Aff. ¶ 7. (Dkt. 55-

3.) She then assessed Plaintiff on two occasions in relation to his right hip. The first

occurred on June 7, 2011, and the second occurred on May 23, 2012. (*Id.*) The medical

records do not indicate Dr. Dawson treated Plaintiff after May 23, 2012.

Dr. Dawson's June 7, 2011 assessment was to determine the course of treatment

for Plaintiff's right hip; namely, whether surgical intervention was necessary or if

conservative treatment was more appropriate. (Dawson Aff. ¶ 8.) Dr. Dawson's notes

reflect that he was a fifty-six year old male who was to be released from his sentence in

September of 2012, and that he was currently working in the Inmate Labor Department

(ILD) which Dr. Dawson found significant. (*Id.*; Dkt. 55-8 at 49.) Part of the evaluation

for surgical intervention is to assess a person's activities of daily life to see how far they

are compromised. (Dawson Aff. ¶ 8.) For example, if a person is immobilized and cannot

walk even with assistance of a device such as a cane, crutch, or walker, their activities of

daily living would be considered severely compromised. (*Id.*) There are other factors that

**REPORT AND RECOMMENDATION - 6**

would then need to be considered, such as the overall physical condition and health of the individual, age, and whether other alternative treatments had first failed. (*Id.*)

When Dr. Dawson assessed Plaintiff on June 7, 2011, he could work in the ILD, which did not suggest surgery was necessary at that time. (*Id.*) Dr. Dawson's notes indicate Plaintiff was suffering from end state osteoarthritis of the right hip, and her treatment recommendation was pain management with NSAIDS. In her medical judgment, the hip replacement was elective and could wait until further pain management with drug therapy was exhausted. (Dkt. 55-8 at 49; Aff. of Dawson ¶ 13, 14.)

At that June 7, 2011 visit, Dr. Dawson reviewed x-rays, which demonstrated degeneration in the hip. (Dkt. 55-8 at 49.) Dr. Dawson increased pain medications for the management of Plaintiff's condition. (*Id.*) As of June 7, 2011, Dr. Dawson noted that Plaintiff's pain medication progression had not been completed, which means that pain control begins with first step drugs and then increases to stronger medications. (Dawson Aff. ¶ 13.) First step drugs are generally acetaminophen, dipyrone, non-steroidal anti-inflammatories drugs (NSAIDs), etc. (*Id.*) If complete pain relief is not achieved or disease progression necessitates a more aggressive treatment, a mild opioid such as codeine or Tramadol (Ultram) may be added to the existing nonopioid regime. (*Id.*) If that becomes insufficient, the mild opioid is replaced by a stronger opioid such as hydrocodone, oxycodone or others, while continuing the non-opioid therapy. (*Id.*) Even in this setting, the medication progression can continue through increased dosage until a patient is pain free or at the maximum possible relief without intolerable side effects. (*Id.*)

There is no dispute that pain medication is considered a form of alternative treatment for osteoarthritis in lieu of surgery. (*Id*.)

In Plaintiff's situation, as of June 7, 2011, he was already on Naproxen (a NSAID). (Dawson Aff. ¶ 14.) Dr. Dawson increased the pain medication progression by adding an accompanying order of Ultram, 50 mg one tab orally up to three times a day for ninety days. (*Id*.) She also made orders for Prilosec, which is a proton pump inhibitor for gastro-intestine protection with use of non-steroidal anti-inflammatories. (*Id*.) Plaintiff also received a prescription for Naproxen that was keep on person ("KOP") at that time. (*Id*.) These orders remained constant through her next assessment on May 23, 2012. (*Id*.) Plaintiff had been provided a cane but was not using it because "it is embarrassing." (*Id*.)

Upon her review of the medical records, Dr. Dawson noted that Plaintiff's Heath Service Request forms were mostly for refills of pain medication and Prilosec. (Dawson Aff. ¶ 15.) Plaintiff submitted an HSR on May 4, 2012, in relation to a desire to discuss other options regarding his right hip pain; Dr. Dawson assessed him on May 23, 2012. (Dawson Aff. ¶ 16.) According to Dr. Dawson's notes, Plaintiff reported to Dr. Dawson he was told that, instead of being paroled in September of 2012, he had to "do TC at ICC," and requested that Dr. Dawson "change his pathway or say he can't medically do it. Wants at least for me to send him back to SICI." (Dkt. 55-7 at 7.)

Dr. Dawson states in her affidavit that, based upon her recollection of her progress notes, the primary focus of the assessment was not in relation to treatment options for the hip; rather, the primary focus was Plaintiff's request for a pathway change. (Dawson Aff.

¶ 16.) Plaintiff did not want to participate in the therapeutic community program ("TC") at Idaho Correctional Center ("ICC"). (*Id*.) TC is a type of classroom where sitting for long durations often occurs. (*Id*.)  Plaintiff subjectively reported symptoms relating to sitting. (*Id*.) He denied any new injuries. (*Id*.; Dkt. 55-7 at 7.)

During the visit, Dr. Dawson observed Plaintiff was sitting comfortably, and he had a slow gait with a very mild limp. (Dkt. 55-7 at 7.) Dr. Dawson's notes reflect that, in her medical judgment, Plaintiff was on appropriate medication for the level of activities required at ICC. (*Id.*). Her notes further reflect that her assessment of his condition was the same as her previous assessment: end stage osteoarthritis. Dr. Dawson determined Plaintiff was on the appropriate medications for the level of activity required. (*Id*.) Dr. Dawson explained to Plaintiff that "medical does not determine housing or pathways[;]" nevertheless, Dr. Dawson noted she felt Plaintiff could "do a TC program if required by IDOC if allowed ability to stretch some during long periods of sitting and physical exercise requirements modified to his ability." (*Id.*)  Dr. Dawson offered to write a summary letter of Plaintiff's medical condition if needed, and did not think further surgery was medically necessary at that time. (*Id.*) Dr. Dawson continued Plaintiff's Prilosec and Ultram as the Naproxen had been continued earlier in the month. (*Id.*)

If Plaintiff had reported increased complaints of pain to Dr. Dawson or other providers, or reported an inability to perform daily life activities, she may have taken some different actions. (Dawson Aff. ¶ 18.) Here, Plaintiff did not have complaints of increased pain, but importantly, Plaintiff indicated that he had no new injuries. (*Id*.) If Dr. Dawson's clinical assessment demonstrated worsening, she could have changed his

treatment plan. (*Id*.) She could have ordered an x-ray to ascertain the degenerative changes, and depending upon those results, she may have increased the dosage of Ultram or changed it to a stronger opioid; she may have considered a Kenalog injection; she may have strongly encouraged that he use a cane or other walking aid despite his embarrassment; or, she may have referred him for an assessment by an orthopedic surgeon. (*Id*.) However, Plaintiff did not present with any new or different symptoms on that date which would have indicated the potential need for such treatment options. (*Id*.)

It is Dr. Dawson's professional medical opinion that Plaintiff received appropriate care and treatment by her, which care met the applicable standard of care. (Dawson Aff. ¶ 19.) Moreover, it is Dr. Dawson's professional medical opinion that a right total hip replacement for Plaintiff was not medically necessary on June 7, 2011 or May 23, 2012. (*Id*.)

Plaintiff did not submit contrary medical records or evidence other than disputing the physician's records with his own opinion testimony about the severity of his osteoarthritis. Plaintiff expressed his belief that an orthopedic surgeon would have been more qualified to assess his level of dysfunction at the time he was being treated by Dr. Dawson, as he was in "intense pain associated with normal activities." (Dkt. 66-1 at 2.) Plaintiff acknowledges he saw Dr. Dawson on May 23, 2012, but disputes Dr. Dawson's knowledge about Plaintiff's daily activities and his pain level. (Dkt. 66-1 at 3-4.) Plaintiff disputes that the pain medication he was given was effective, and asserts that Dr. Dawson agreed Plaintiff needed surgery. Plaintiff asserts that a total hip replacement would have ended his pain and helped him achieve a more natural quality of life, and that in his

opinion, the benefits of surgery outweighed the purported risks. (Dkt. 66-1 at 7.) Plaintiff contends the refusal by prison medical doctors to authorize hip replacement surgery constituted cruel and unusual punishment in violation of the Eight Amendment.

**DISPOSITION**

**1.      Standard of Law**

  **A.      *Summary Judgment***

  Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). The requirement is that there be no genuine dispute as to any material fact. "Material facts are those that may affect the outcome of the case." See id. at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute,

**REPORT AND RECOMMENDATION  - 11**

or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c) (3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c) (2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630–31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue (dispute) as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and

**REPORT AND RECOMMENDATION  - 12**

supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

### B.     *Section 1983 Claims*

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, Plaintiff must establish four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). In other words, Plaintiff must show that Defendants' actions caused the deprivation of a constitutional right. 42 U.S.C. § 1983; *Arnold v. International Business Machines Corp*., 637 F.2d 1350, 1355 (9th Cir. 1981). "The causation requirement of § 1983 ... is not satisfied by a showing of mere causation in fact[;][r]ather, the plaintiff must establish proximate or legal causation." *Id*. The United States Court of Appeals for the Ninth Circuit has explained: "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivations of which he complains." *Id*. (internal citation omitted).

**REPORT AND RECOMMENDATION  - 13**

### C.      *Eighth Amendment Claims of Inadequate Medical Care*

To state a claim under the Eighth Amendment, Plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> [F]ailure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain [;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, a prison official acts with "deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev*., 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted). Nonetheless, "whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that defendant actually knew of a risk of harm).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the

**REPORT AND RECOMMENDATION  - 15**

circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs*., 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). Nor does the Eighth Amendment provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). Finally, a mere delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060.

### D.   *Statute of Limitations*

Section 1983 actions are analogous to actions for injuries to personal rights and therefore subject to the state statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985). Thus, Section 1983 actions in Idaho must meet the two-year statute of limitations for personal injury actions established by Idaho Code § 5–219(4). *Samuel v. Michaud*, 980 F.Supp. 1381, 1410 (D. Idaho 1996); *see also Henderson v. State*, 715 P.2d 978, 981 (1986). Section 5–219(4) provides in relevant part, "An action to recover damages ... for an injury to the person ..." must be brought "within two (2) years." Idaho Code § 5–219(4) (2000).

Notwithstanding the use of the state statute of limitations in civil rights cases, the Court uses federal law to determine when a claim accrues under a statute. *Elliott v. Union*

City, 25 F.3d 800, 801–02 (9th Cir. 1994). The Ninth Circuit has determined that a claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Under the "discovery rule," the statute begins to run once a plaintiff "has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'" *Bibeau v. Pacific Northwest Research Foundation*, 188 F.3d 1105, 1108 (9th Cir. 1999) (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Under the discovery rule, a plaintiff "must be diligent in discovering the critical facts," or his claim will be barred if he "should have known in the exercise of due diligence." *Bibeau*, 188 F.3d at 1108.

Equitable estoppel applies as a defense to statute of limitations issues. In Idaho, equitable estoppel is a principle that "does not 'extend' a statute of limitation[;][r]ather, it prevents a party from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co. v. Chemetics International*, *Inc.*, 887 P.2d 1039 (1994). In Idaho, the elements of equitable estoppel are as follows:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Id*. at 1041 (internal citations omitted).

**REPORT AND RECOMMENDATION  - 17**

In addition, Idaho statutorily tolls the limitations period for a person's minority status or insanity. Idaho Code § 5-230.  "Statutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *Wilhelm v. Frampton*, 258 P.3d 310, 312 (Idaho 2007) (internal citation omitted).

## 2.    Discussion

### A.    Dr. Klint Stander

Dr. Stander treated Plaintiff in 2009. The original complaint was filed on February 3, 2014. (Dkt. 44.) In its Report and Recommendation, the Court recommended that all state and federal claims against Dr. Stander be dismissed with prejudice, unless Plaintiff could show that equitable tolling or equitable estoppel should be applied to render them timely. The District Judge adopted the report and recommendation, permitted Plaintiff to amend his pleadings by October 2, 2015, and conditionally granted Dr. Stander's motion for partial dismissal or summary judgment as stated in the Report.

The amended complaint does not indicate Dr. Stander provided any care to Plaintiff after 2009. (Dkt. 64 at 6.) There is no evidence in the medical records Defendants submitted indicating Dr. Stander provided any further treatment to Plaintiff after May 1, 2009. Plaintiff does not provide any evidence or argument in support of a claim that the statute of limitations should be tolled for any reason.

The Court will recommend that Dr. Stander's motion for summary judgment be granted and the claims against him be dismissed with prejudice.

### B.     Dr. April Dawson

Similarly, the Court noted that any conduct complained of against Dr. Dawson occurring prior to February 3, 2012, would be barred by the statute of limitations. (Dkt. 44 at 6-7.). The Court indicated Dr. Dawson's acts complained of after September of 2012, were within the statute of limitations period, and Plaintiff could proceed on only those claims within the statute of limitations period unless Plaintiff could show equitable tolling or equitable estoppel applied. (Dkt. 44 at 7, 11.) In his amended complaint, Plaintiff mentions only his visit in May of 2012 with Dr. Dawson to pursue a hip replacement surgery. Accordingly, claims of negligence or constitutionally inadequate medical care occurring prior to February 2, 2012, are time barred nor were they pursued in Plaintiff's amended complaint. (Dkt. 64 at ¶ 12.)

On the record before it, the Court concludes Plaintiff has not produced sufficient evidence to show that Dr. Dawson was deliberately indifferent to a serious medical need of Plaintiff in May of 2012. Although Plaintiff had a documented long-standing medical condition, the record reflects Dr. Dawson continued with the course of conservative treatment for Plaintiff's complaints of hip pain caused by degenerative arthritis with the various medications that were available in the formulary. There is no hint in the record that Dr. Dawson (1) knew of or drew an inference of a substantial risk of harm to Plaintiff's health with the course of treatment chosen for Plaintiff, and (2) recklessly disregarded the risk and continued the course of treatment anyway. For that matter, Plaintiff has not come forward with sufficient medical evidence from which a jury could find a substantial risk of harm to Plaintiff's health existed, either for the one time Dr.

**REPORT AND RECOMMENDATION  - 19**

Dawson treated Plaintiff in May of 2012, or for her decision to continue conservative treatment.

Whether Dr. Dawson's choice of conservative treatment was optimal or the one Plaintiff requested is not at issue in the inquiry into the subjective prong of the deliberate indifference analysis. The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d at 267. Plaintiff has failed to come forward with sufficient evidence that Dr. Dawson's continued recommendation of conservative treatment and pain management was "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d at 989. Plaintiff has not supported his position with an opinion from any medical provider showing that, under the circumstances reflected in the record, Dr. Dawson's decision to continue conservative treatment was even negligent (which does not rise to the level of an Eighth Amendment violation).[2]

As a result of the foregoing, the Court will recommend that Dr. Dawson's motion for summary judgment be granted, and Plaintiff's Eighth Amendment claims against Dr. Dawson be dismissed with prejudice. The Court previously dismissed Plaintiff's state law claims of negligence.

---

[2] Plaintiff attempts to do so via paraphrasing the Federal Bureau of Prisons supposed criteria for evaluation and management of osteoarthritis of the hip and knee. (Dkt. 66 at 2.) This document is not in the record and Plaintiff's summary of what it purports to say does not constitute sufficient evidence upon summary judgment.

**REPORT AND RECOMMENDATION  - 20**

## <u>RECOMMENDATION</u>

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Defendants' Motion for Summary Judgment (Dkt. 55) be **GRANTED** and Plaintiff's claims against Dr. Dawson and Dr. Stander be dismissed with prejudice.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: May 24, 2016

_____

Honorable Candy W. Dale
United States Magistrate Judge