UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID KARL LONN,<br><br>    Plaintiff,<br><br>v.<br><br>CORIZON HEALTH, DR. APRIL DAWSON, DR. DAVID AGLER, and DR. KLINT STANDER,<br><br>    Defendants. | Case No. 1:14-cv-00031-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Pending before the Court is Defendant Dr. David Agler's Motion for Summary Judgment. (Dkt. 78.) Having reviewed the parties' briefing, as well as the record in this matter, the Court concludes oral argument is unnecessary. Dist. Idaho L. Rule 7.1. Accordingly, the Court enters the following report recommending the motion for summary judgment be granted and the complaint against Dr. Agler be dismissed with prejudice.

**REPORT AND RECOMMENDATION - 1**

# FACTS

The facts, including this matter's procedural history, were extensively discussed in the Court's prior report and recommendation filed on May 24, 2016, which recommended that the Court grant Dr. Dawson's and Dr. Stander's motion for summary judgment and dismiss the complaint against them. (Dkt. 72.) The recommendation was adopted on July 14, 2016. (Dkt. 74.) The Court therefore incorporates the background and history set forth therein, and will discuss only the facts pertinent to Lonn's claims of deliberate indifference asserted against Dr. Agler.

Lonn was diagnosed via x-ray in 2011 with end stage degenerative osteoarthrosis in his right hip. (Dkt. 65-1 at 17.) Lonn had previously had his left hip replaced due to osteoarthritis. Lonn's claims relate to his allegations that Defendants' conservative treatment plans caused him to suffer from prolonged pain in his right hip.

Dr. Agler is a physician licensed to practice medicine in the state of Idaho who was employed by Corrections Corporation of America (CCA) from September 2010 through June 30, 2014. (Agler Decl., ¶¶ 2, 6.) He was employed as a physician at the Idaho Correctional Center ("ICC"). (Id. at ¶ 2.) ICC was an Idaho Department of Correction ("IDOC") prison facility that was operated under contract by CCA. (*See id*.) In conjunction with other care providers, Dr. Agler treated Lonn in November of 2012 and January of 2014 for Lonn's complaints of right hip pain. (Dkt. 32-1, 64, 72.)

On November 5, 2012, Lonn submitted a medical concern form indicating his right hip pain had become worse. He requested to see a specialist and to explore "higher level meds." (Dkt. 65-1 at 1.) At that time, he was being prescribed Ultram, Naproxen,

Prilosec, and Ultram. *Id.; see also* Agler Decl. ¶ 10; (Dkt. 55-6 at 28.) Upon Lonn's transfer to ICC on November 6, 2012, Dr. Agler renewed Lonn's medications and scheduled him for an appointment to discuss Lonn's use of Tramadol (Ultram), which is not usually prescribed long term for the type of pain Lonn was experiencing. (Dkt. 65-2 at 4.) Dr. Agler saw Lonn on November 20, 2012, to discuss Lonn's hip joint pain and treatment options.

During that visit, Lonn informed Dr. Agler that he was able to ambulate without a cane or other assistance. Agler Decl. ¶ 11. Lonn reported some pain with bending over and twisting. He also stated that in the past he had used Ultram, naproxen and acetylsalicylic acid (Aspirin). He said that he had not used other non-steroidal anti-inflammatories (NSAIDs) for his pain. Lonn complained also of pain in his neck and knees. Dr. Agler observed that Lonn did not appear to be in pain. He had a minimally antalgic gait (a mild limp). His right hip showed some limitation in his range of motion and some pain with interior and exterior rotation and hip flexion. His neurologic sensation was grossly intact. Dr. Agler's assessment was that Lonn had osteoarthritis in his right hip. However, Dr. Agler noted that Lonn's subjectively reported level of pain was not consistent with his physical exam.

At that time, Dr. Agler suggested discontinuing Tramadol and switching to Mobic, which Lonn refused. Alternatively, Dr. Agler recommended Naproxen, Tylenol, or Ibuprofen. The reason for discontinuing Tramadol was the possibility for dependence and abuse, which is what makes it undesirable for long-term use. Agler Decl. ¶ 11. Dr. Agler discontinued the prescription for Tramadol, but continued Lonn's prescription for

naproxen. *Id.* Dr. Agler noted Lonn should follow up as needed, and if the pain medications were insufficient, he could submit a Health Services Request to discuss alternative pain medications or another alternative course of treatment. *Id.* In Dr. Agler's professional opinion, and to a reasonable degree of medical certainty, he determined that a hip replacement was not medically indicated at that time and that continuation of conservative treatment with NSAIDs, such as naproxen, ibuprofen, and Tylenol, was a medically reasonable course of conservative treatment. Alternative measures may include assistive devices for walking, steroid injections, or physical therapy.

On December 18, 2012, Dr. Agler approved a request to refill Mr. Lonn's prescription for naproxen with two additional refills. Dr. Agler did not personally examine Lonn in conjunction with this refill request. The November 6, 2012 prescriptions, November 20, 2012 appointment and orders, and the December 18, 2012 refill of naproxen were Dr. Agler's only involvement with Lonn's medical treatment during November and December of 2012. (Dr. Agler did not see Lonn again until July 30, 2013.)

Throughout 2013, Lonn was evaluated by several other medical care providers, all of whom continued the conservative course of treatment for Lonn's right hip arthritis. On July 30, 2013, Dr. Agler evaluated Lonn, who reported that Mobic[1] had helped some, but that he still wanted a hip replacement. (Dkt. 55-5 at 23.) Lonn was not using any assistive devices at that time, and refused a wheelchair. Dr. Agler offered a steroid injection,

---

[1] While Lonn initially refused to try Mobic, he was offered the opportunity by another medical care provider to switch pain medications to Mobic on February 22, 2013, and he acquiesced to the medication change. (Dkt. 55-5 at 23.)

which Lonn refused also. Consequently, Dr. Agler adjusted Lonn's medication from Mobic to Lodine. Dr. Agler did not treat Lonn further in 2013.

Dr. Agler does not recall seeing, evaluating, or treating Lonn in January of 2014. Agler Decl. ¶ 26. Lonn was later transferred out of ICC to another IDOC facility on January 16, 2014. On January 22, 2014, Lonn submitted a health services request complaining of worsening right hip pain, and requesting a hip replacement. (Dkt. 65-1 at 11.) Lonn complained that the medication he was prescribed was not working for his pain. *Id.*

Lonn was referred for further x-rays, which were taken on October 22, 2014. (Dkt. 65-1 at 20.) The films depicted complete loss of the right hip joint space, along with severe arthritic changes and sclerosis. *Id.* Dr. Agler's stamp appears on the x-ray, indicating he reviewed the radiology report on October 28, 2014, and ordered follow up. Lonn was then referred to Dr. Roman Schwartsman, an orthopedist, who examined Lonn on December 2, 2014. (Dkt. 65-1 at 21.) Dr. Schwartsman noted Lonn had difficulty sitting and performing activities of daily living, and recommended a total right hip arthroplasty as soon as possible. *Id.* Dr. Agler's stamp appears on the office note, indicating he reviewed it on December 5, 2014, and that the hip arthroplasty was "already ordered."

## ANALYSIS

1.  **Standard of Law**

### A. *Summary Judgment*

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The requirement is that there be no genuine dispute as to any material fact. "Material facts are those that may affect the outcome of the case." *See id*. at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c) (3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c) (2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630–31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue (dispute) as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

B. *Section 1983 Claims*

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, Plaintiff must establish four elements: "(1) a violation of rights

**REPORT AND RECOMMENDATION - 7**

protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). In other words, Plaintiff must show that Defendants' actions caused the deprivation of a constitutional right. 42 U.S.C. § 1983; *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). "The causation requirement of § 1983 ... is not satisfied by a showing of mere causation in fact[;][r]ather, the plaintiff must establish proximate or legal causation." *Id*. The United States Court of Appeals for the Ninth Circuit has explained: "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivations of which he complains." *Id*. (internal citation omitted).

### C.  *Eighth Amendment Claims of Inadequate Medical Care*

To state a claim under the Eighth Amendment, Plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). An Eighth Amendment

**REPORT AND RECOMMENDATION - 8**

claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

> The Ninth Circuit has defined a "serious medical need" in the following ways:
>
> [F]ailure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain [;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, a prison official acts with "deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"

*Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted). Nonetheless, "whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that defendant actually knew of a risk of harm).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs*., 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). Nor does the Eighth Amendment provide a right to a specific

**REPORT AND RECOMMENDATION - 10**

treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). Finally, a mere delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060.

**2.     Discussion of Dr. Agler's Care**

Lonn contends Dr. Agler's care was deficient because Dr. Agler did not refer him to a specialist sooner, and his continued course of conservative treatment caused Lonn to endure chronic pain. Lonn contends, without any support, that Dr. Agler falsified his medical opinions to prevent Lonn from obtaining a consultation with an orthopedic specialist, and discontinued Lonn's pain prescription regimen. However, the only medication Dr. Agler discontinued was Lonn's prescription for Ultram, an opioid medication that was not suitable for long term use, and was subject to abuse.

Lonn argues also that Dr. Agler departed from accepted clinical practice guidelines, because Dr. Agler failed to refer Lonn to an orthopedic specialist for consideration of a hip replacement given Lonn's diagnosis. Lonn contends that Dr. Schwartsman's 2014 evaluation and recommendation of hip replacement surgery supports Lonn's contention that it should have been ordered sooner.

Whether Dr. Agler's choice of conservative treatment was optimal or the one Lonn requested is not at issue in the inquiry into the subjective prong of the deliberate indifference analysis. The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d at 267. Lonn has failed to come forward with

sufficient evidence that Dr. Agler's continued recommendation of conservative treatment and pain management was "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d at 989.

Lonn has not supported his position with an opinion from any medical provider showing that, under the circumstances reflected in the record, Dr. Agler's decision to continue conservative treatment was even negligent (which does not rise to the level of an Eighth Amendment violation). Dr. Schwartsman's observation and recommendation in 2014 does not provide support for Lonn's argument that Dr. Agler's course of treatment in 2012 and 2013 was constitutionally inadequate.

Lonn has failed to present evidence indicating a genuine dispute as to a material fact regarding his claims that Dr. Agler's treatment in November of 2012, or thereafter, constituted deliberate indifference. The Court therefore will recommend that summary judgment be granted.

# **RECOMMENDATION**

## **NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Defendant's Motion for Summary Judgment (Dkt. 78) be **GRANTED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: May 19, 2017

Honorable Candy W. Dale
United States Magistrate Judge